On an indictment charging murder in the first degree, a jury found appellant guilty of manslaughter in the first degree and fixed his punishment at imprisonment for ten years. He was sentenced accordingly.
The alleged victim was Nora Banks who was killed by a pistol bullet that entered her skull from front to rear. This occurred while she was in the home of defendant while a drinking and dancing party was in progress in which five or six adults and three or four times as many children were present on Sunday night, April 29, 1979. She arrived after most of the others and was accompanied by a man who later left the house without her. She and some others present left temporarily to obtain alcoholic beverages. She didn't seem to get along well with the others. She engaged in separate arguments with two of the women. State's witnesses testified that the party came to an abrupt halt when they heard a gunshot in another room. Upon hearing the gunshot, they immediately left the house, all except some children, appellant, Nora Banks, and Dennis Scott, seventeen years of age, who testified he had not been drinking.
Dennis Scott further testified he heard the appellant tell Nora Banks "to throw her gun out and come out of the bathroom," and then he heard a shot. He said he heard appellant tell Nora Banks again to come out of the bathroom and that some time thereafter he heard a second shot, and possibly a third shot. Upon hearing the last shot, the witness said he "went back in there" where the shots were fired and saw Nora Banks on the floor and the appellant with a pistol in his hand, and that thereafter appellant said "he was going to call the ambulance and police." *Page 1022 
The body of the victim was left lying on the floor until officers arrived. They found and removed a fully loaded .32 caliber pistol from her clothing. A witness for defendant, Joe Ed Kelly, Jr., fifteen yeas of age, testified that after Nora Banks had finished arguing with his mother, she started for the bathroom and at that time pulled a pistol. He said that he then told appellant that "she was getting the gun."
Appellant testified that he heard Joe Ed Kelly, Jr., say "she was getting that gun," and he tried to stop Nora Banks by grabbing her arm, but he didn't succeed. He said he then went to his bedroom and took his pistol out of the drawer, then went back into the hall and asked Nora Banks to "throw her gun out." According to his further testimony, Nora Banks made no response, and he shot into the floor "to let her know (he) had a gun;" that he asked her again to throw her gun out and she did not do so. Then Nora Banks unlocked the bathroom door and came out cursing appellant, with her hand in her purse. He said he then "backed back" and fired.
No contention is made on appeal that the evidence was not sufficient to justify the verdict. We see no reasonable basis for such a contention. Even though there was evidence to show self-defense, the jury was justified in concluding that some of the elements of self-defense were lacking. The evidence is almost conclusive that deceased did not have a pistol in her hand at the time she was shot by defendant.
Appellant argues that the court erred in refusing to admit testimony "relating to the bad reputation of the victim for carrying a gun." While the witness Joe Ed Kelly, Jr., was being cross-examined, he was asked by defendant's counsel, "Did you know her [Nora Banks] reputation in this county for being a gun carrier or gun toter?" State's counsel then said, "Your Honor, I object; he hasn't laid the proper predicate. Hasn't been put in issue." The court then said, "Sustained." On cross-examination of Mrs. Mae Kelly, she was asked by defendant's counsel, "Did you know her [Nora Banks] reputation in the community for carrying a gun?" State's counsel then said, "Judge, I object," and the court said, "Sustained."
There was no evidence that defendant knew the general reputation of the deceased. There was no offer on the part of defendant to show that he knew or had been informed of the reputation of deceased for carrying a gun.
 "If the evidence tends to show that the accused acted in self-defense, the accused is entitled to prove that the deceased was in the habit of carrying firearms or other deadly weapons or that he had the reputation of habitually being armed. Such evidence, however, is only admissible if the accused has introduced or offers to introduce other evidence that he knew or had been informed of such habit prior to the alleged offense, as otherwise it could not have influenced his conduct." Gamble, McElroy's Alabama Evidence, § 63.01 (2) (1977).
Applicable here as adversely dispositive of appellant's insistence is the second sentence of the quoted statement, which is supported by the cited cases of Frazier v. State,48 Ala. App. 210, 263 So.2d 511, cert. denied, 288 Ala. 743,263 So.2d 516 (1972); Glover v. State, 200 Ala. 384, 76 So. 300
(1917).
Appellant complains of the language of the trial court in its oral charge in instructing the jury as to the defense of self-defense, particularly that part of the charge as follows:
 ". . . Before the law will justify or excuse a homicide under the plea of self-defense, the person relying on the plea should not have provoked or encouraged the difficulty and that he was or appeared to be so menaced at the time to create reasonable apprehension of danger to his life or of receiving serious or grievous bodily harm and ordinarily that there was no other reasonable hope of escape from such impending peril except in one's own home or place of business."
The transcript shows that immediately after the instruction quoted above, the court said: *Page 1023 
 "So that as it applies in this situation, in order to be justified, in order for a homicide to be justified or excused because of self-defense, the person relying on it must not have provoked or brought on the difficulty and he must have been or appeared to be at the time so menaced as to create reasonable apprehension of danger to his life or of receiving serious or grievous bodily harm."
This last quoted portion of the court's oral charge negates, in our opinion, the contention of appellant that an issue of fact was submitted to the jury as to whether defendant was in his own home. Criticism is directed also to the use of the expression "hope of escape" instead of "mode of escape" or "means of escape" or the like. Appellee suggests the possibility that the choice of the word "hope" as shown in the transcript could be an error "in transcription." We cannot say, of course, but no prejudice could have resulted therefrom to defendant as it is clear that the duty to retreat in different circumstances was eliminated by the trial court as an element of self-defense in the instant case, in which the undisputed evidence showed conclusively that defendant was in his own home. Furthermore, we should note that apparently no exception was taken to the oral charge.
After the jury had deliberated for a substantial period of time, it returned to the courtroom and requested that some portions of testimony of witnesses be read to the jury by the court reporter, which was done. The transcript on appeal does not show what portions of such testimony were read to the jury by the court reporter. Appellant says that "since it cannot be determined what the court reporter read back, the substantial rights of the Appellant were injuriously affected." He cites in support of his contention Adams v. State, 46 Ala. App. 402,243 So.2d 386 (1970), in which the testimony as read back by the reporter was substantially more unfavorable to defendant than the actual testimony of a witness. This required a reversal. There the error prejudicial to defendant was affirmatively shown. Here we are asked to base a presumption of prejudice upon an unwarranted assumption of an error of the court reporter.
We have searched the record for error prejudicial to defendant and have found none. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.
 *Page 87