The appellant was indicted by the Montgomery Grand Jury and charged in a seven count indictment with possession of seven different controlled substances. After a jury trial, appellant was found guilty and sentenced to three years in the penitentiary.
The appellant, prior to trial, had filed a motion to suppress and a plea of former jeopardy. Both the plea and the motion were denied. No evidence was taken regarding the plea of former jeopardy, but evidence was submitted on the motion to suppress.
On July 17, 1978, officers of the Montgomery Police Department and Montgomery County sheriff's deputies went to the residence of the appellant and her husband at 2029 Yancey Street, Montgomery, Alabama. The officers attempted to make a buy of marijuana. When the attempt was unsuccessful, they produced a search warrant *Page 538 
to search the premises. The search warrant was based on information from a reliable informant who had personally observed on June 16, 1978, a quantity of marijuana growing in the back yard at 2029 Yancey Street, Montgomery, Alabama.
Pursuant to the search warrant, the officers entered the premises and found marijuana in the house and growing in the back yard. They also found seven different controlled substances along with other non-controlled substances.
The appellant and her husband were arrested and were later indicted by the Montgomery County Grand Jury and charged with possession of the controlled substances which were found on the premises. The appellant was not charged in the circuit court with possession of marijuana; however, she had previously been tried in the city court for possession of marijuana. A decision in that case was pending at the time of the circuit court trial.
 I
The appellant contends that the trial court committed reversible error when it overruled her plea of former jeopardy. She argues that, at the time of the trial on charges which included possession of seven drugs taken during the search, she had been tried in the city court for possession of marijuana, and the case had been taken under advisement by the judge.
In Hattaway v. United States, 399 F.2d 431, the United States Court of Appeals for the Fifth Circuit stated:
 "Offenses are not the same if, upon the trial of one, proof of an additional fact is required which is not necessary to be proved in the trial of the other, although the same acts may be necessary to be proved in the trial of each. Ebeling v. Morgan, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915); Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958). . . ."
Also, the Supreme Court of the United States in Gavieres v.United States, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911), said:
 "A conviction or acquittal upon one indictment is no bar to a subsequent conviction and sentence upon another, unless the evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other. The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."
The appellant, in support of her contention, has cited three cases involving the possession of whiskey. It is our judgment that these cases are distinguishable from the case at bar in that the elements of proof necessary for "possession of whiskey" were the same in the three cases. In the present case, the prosecutions are for separate offenses. One was a trial in the city court on a misdemeanor charge. The other involved charges for the possession of seven different controlled substances in violation of the Uniform Controlled Substances Act.
These prosecutions grew out of the same transaction or facts, but they do not involve a jeopardy question because there are distinct elements in one prosecution that are not present in the other. On a marijuana charge, the prosecution must prove that the green leafy substance found in the possession of the appellant was marijuana. On each of the seven separate charges in the circuit court trial, there had to be proof verifying the contents of each of the individual substances charged in the violation, and this proof was submitted by the toxicologist.
Proof necessary for the conviction of the offense of possession of a controlled substance is different from that of a simple possession of marijuana. Therefore, we *Page 539 
find that the prosecution for marijuana in the city court and the prosecution in the circuit court were for separate offenses, although they were based on the same set of facts. The question of jeopardy is not involved because proof of "an additional fact" was required in each prosecution, that "additional fact" being different in each case. Hattaway v.United States, supra. See also United States v. Hinton, 2nd Cir., 543 F.2d 1002.
 II
The appellant's second complaint is that the trial court committed reversible error in overruling her motion to suppress. She argues that the search warrant and supporting affidavit made no mention of any contraband other than marijuana and that the seizure of the other substances which "were not obviously contraband" was illegal.
The affidavit in support of the search warrant, omitting the formal parts, reads:
 "On June 16, 1978, Affiants J.G. Laing and Larry W. Burdette met in person with a confidential and reliable source hereinafter referred to as `A.' `A' stated to the affiants that he had personally observed a quantity of Marijuana growing in the back yard at 2029 Yancey Street, Montgomery, Alabama, on June 16, 1978. Upon checking with the Alabama Power Company, Affiant Laing found that the power for the residence of 2029 Yancey Street in Montgomery, Alabama, is listed in the name of Cecil Green.
 "Further probable cause being that `A' brought one of the Marijuana plants to the office of the Narcotics and Dangerous Drugs Detail and in a controlled field test it did in fact test for Marijuana.
 "Source `A' has proven reliable in the past in that on June 24, 1977, Affiant Laing received information from `A' in person that resulted in the arrest of Donald Richard Jones AKA Ricky Pittman for sale of Marijuana. Pittman was convicted for Felony Sale of Marijuana and served six (6) months in the Montgomery County Jail.
 "Source `A' has further proven reliable in that `A' has given Affiant Laing information on other drug activity which has led to two (2) Sale of Marijuana cases within the past thirty (30) days of this date. Arrests are pending on these cases.
 "This affidavit is based upon facts and personal knowledge and observation of Source `A' as well as a positive field test by Affiant Laing showing that the plant brought to the Narcotics office was indeed Marijuana. This affidavit is made for the purpose of securing a daytime search warrant for the residence at 2029 Yancey Street, Montgomery, Alabama."
A search warrant was issued by a judge of the District Court of Montgomery County based on the foregoing affidavit. Armed with the search warrant, Officer J.G. Laing, other Montgomery police officers, and Montgomery County sheriff's deputies went to the residence of the appellant. On their arrival, they attempted to make a purchase, and, when their effort failed, they presented the search warrant and searched the premises. Larry W. Burdette, a Montgomery police officer, found marijuana plants growing in the back yard. Burdette, the evidence technician, collected from the upstairs front bedroom some of the drugs which were the subject of the present prosecution. Other drugs were found in the kitchen.
An "evidence inventory" was presented as State's Exhibit No. 1 during the hearing on the motion to suppress. That inventory showed that, in addition to the marijuana found growing in the back yard, marijuana was found in the top drawer of a filing cabinet in the study, in the coffee table in the study, and in a drawer in the kitchen. Also, certain pills were found in the kitchen cabinet. Two large bricks of marijuana were found in a bedroom closet, and marijuana and pills were found in the dresser and in a jewelry box. Also, marijuana was found in an end table.
During the hearing on the motion to suppress, the appellant took the stand and testified that the officers entered the house before the deputy arrived with the search *Page 540 
warrant. Further, the appellant stated that the search began after Officer Burdette had pulled a gun and stated that the premises were to be searched. The appellant presented two other witnesses at the hearing who gave substantially the same testimony she had given concerning when the search began.
The appellant, in support of her contention, has cited Peavyv. State, Ala.Cr.App., 336 So.2d 199, which states: "General exploratory searches are forbidden by Federal and State courts alike." However, dispositive of the issue in appellant's case is Brantley v. State, 294 Ala. 344, 317 So.2d 345. In Brantley
the Supreme Court of Alabama held that evidence of LSD and cocaine was relevant on the issue of whether the accused possessed marijuana for personal use and that the evidence showed the "complete story." In the present case, the admission into evidence of the seven different controlled substances revealed the "complete story" and was relevant on the issue of whether the appellant possessed the contraband with an intent other than for her personal use. The admission of the other drugs by the trial court was proper. Brantley v. State, supra. See also Satterwhite v. State, Ala.Cr.App., 364 So.2d 345, reversed on other grounds, Ala., 364 So.2d 359.
The appellant maintains that when the officers found the contraband they could not have conclusively known that the substances were, in fact, contraband. Under the rationale ofHerrin v. State, Ala.Cr.App., 349 So.2d 103, the officers, after finding marijuana plants growing in the back yard and varying amounts of marijuana in several places in the house, could "reasonably suspect" that other substances were, in fact, contraband.
Under these facts, the trial judge properly overruled the motion to suppress.
 III
The appellant's final contention is that the trial court committed reversible error when it overruled her objection to the prosecutor's comment in closing argument that she was a "dope dealer." From the record:
 "MR. BELL: I submit to you, ladies and gentlemen, that you have a dope dealer.
"MR. COLLIER: Your Honor, that is totally ridiculous.
"THE COURT: Overruled.
 "MR. COLLIER: I move for a mistrial. This is a completely prejudicial statement, and the only reason for making it is to prejudice the jury in this regard.
"THE COURT: Motion denied.
 "MR. BELL: I submit to you, ladies and gentlemen, that you have a dope dealer at 2029 Yancey Avenue in Montgomery, Alabama. Now, Mr. Collier has speculated as to whether these are diet pills. He has also speculated as to —"
The remark of the district attorney was "amply justified as a deduction from the evidence." Gladden v. State, 24 Ala. App. 188,132 So. 435.
The testimony of Allen Raymond Adair, criminologist with the Department of Forensic Sciences of the State of Alabama, showed that the following items were received from the appellant's residence:
(1) State's Exhibit No. 2, a yellow plastic suitcase containing two bricks of greenish-brown plant material identified as marijuana.
(2) State's Exhibit No. 3, a silver metal pot containing greenish-brown plant material which was identified as marijuana.
(3) State's Exhibit No. 4, a sealed brown plastic bag containing wet brown paper wrapped around plant material which was identified as marijuana.
(4) State's Exhibit No. 5, a clear plastic bag containing various capsules and tablets which were identified as Phentermine and a capsule identified as amphetamine, both of which were controlled substances.
(5) State's Exhibit No. 6, a clear plastic bag containing capsules which were identified as Phentermine and one rolled cigarette which was identified as marijuana. *Page 541 
(6) State's Exhibit No. 7, a clear plastic bag containing various tablets and capsules which were analyzed to be Phentermine and Mazindol, both of which were controlled substances.
(7) State's Exhibit No. 8, a large plastic bag containing one round yellow tablet identified as Diazepam, a controlled substance, along with twenty-five small orange tablets identified as Phenobarbital, a controlled substance. There were also two green and yellow capsules identified as Phentermine and one black and green capsule identified as Chlordiazepoxide, another controlled substance.
All of these items were found in different locations in the house. The substances found in varied locations and the several plants of marijuana growing in the back yard would, without too much imagination, give rise to an inference that the appellant was a "dope dealer." Under the foregoing facts, it is our judgment that the prosecutor's remark was justified as a "deduction from the evidence." Gladden v. State, supra.
 IV
The evidence submitted by the State was sufficient for the jury to infer defendant's guilt in possessing controlled substances in violation of the Uniform Controlled Substances Act of Alabama. In view of the fact that there was legal evidence from which the jury could infer the appellant's guilt, this court will not disturb the verdict. The weight and probative value of the evidence presented a jury question.Rogers v. State, Ala.Cr.App., 353 So.2d 19; Williams v. State, Ala.Cr.App., 335 So.2d 249; Dulaney v. State, 56 Ala. App. 374,321 So.2d 713.
The appellant's motion to exclude, motion for a directed verdict, and motion for new trial were properly overruled by the trial court. Young v. State, 283 Ala. 676, 220 So.2d 843.
We have examined the record and have found no error. The judgment and conviction by the Montgomery County Circuit Court is affirmed.
AFFIRMED.
HARRIS, P.J., and TYSON and BOWEN, JJ., concur.
BOOKOUT, J., not sitting.